**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DIANNA M. MAYNARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:06cv0988** |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | **Judge Thomas A. Wiseman, Jr.** |
| **Commissioner of Social Security,** | ) | **Magistrate Judge John S. Bryant** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Dianna Maynard filed this matter seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") that Plaintiff was not disabled and denying Plaintiff's claims for Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). After the case was referred to United States Magistrate Judge John S. Bryant pursuant to 28 U.S.C. § 636(b)(1)(B), Plaintiff filed her Motion for Judgment based upon the Administrative Record (Doc. No. 16). Defendant filed a response opposing Plaintiff's motion (Doc. No. 19), and Plaintiff filed a reply brief (Doc. No. 20). Magistrate Judge Bryant thereafter filed a Report and Recommendation ("Report") (Doc. No. 21) recommending that the Plaintiff's motion be denied and that the decision of the Commissioner be affirmed. Plaintiff has filed timely objections to the Magistrate's Report (Doc. No. 22), to which the Commissioner has responded (Doc. No. 23).

The Court has reviewed *de novo* the entire record and the pleadings, with particular attention to those portions of the record that are relevant to Plaintiff's objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court finds Plaintiff's objections to be meritorious in substantial part and will therefore set aside the Report, grant Plaintiff's Motion for Judgment and reverse the Commissioner's decision denying benefits.

---

[1] Michael J. Astrue is automatically substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d)(1).

I.      INTRODUCTION

Plaintiff filed her current application for DIB on March 17, 2003, alleging that she has been disabled since August 1, 1999 (later amended to August 24, 1999) due to a combination of impairments including chronic Epstein-Barr virus, headaches, fibromyalgia, depression, nerves, and pain in the back, both arms and left ankle   (Doc. No. 13, Administrative Record (hereinafter, "AR") 337, 49–52, 56.) Plaintiff's application was denied initially and upon reconsideration.   Plaintiff requested and received a hearing.   The hearing was conducted in Cookeville on July 21, 2005 before Administrative Law Judge ("ALJ") George L. Evans, III, at which Plaintiff was represented by counsel.   A transcript of the hearing is included in the Administrative Record, and the ALJ issued a written decision denying Plaintiff's application on December 20, 2005.   The Appeals Council issued a letter dated August 11, 2006 declining to review the case, thereby rendering the ALJ's decision the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).   The Court referred this matter to the Magistrate Judge, who has recommended that the Commissioner's denial of benefits be affirmed.   Plaintiff has filed timely objections to several of the Magistrate Judge's findings, as discussed below.

II.      FACTUAL BACKGROUND

The Court observes that the judicial record thus far lacks a *chronological* development of Plaintiff's various problems, and finds that viewing the record chronologically will better promote a longitudinal view of Plaintiff's various complaints.   In her briefs before this Court, Plaintiff essentially concedes that her period of disability did not begin before her fall in the bathtub and subsequent motor vehicle accident on consecutive days in July 2002, and it is undisputed that her insured period terminated as of December 31, 2004.   Accordingly, the primary focus on the summary below is on the time period between those two dates, except to note some major incidents or assessments that occurred before and after:

September 2000:  Right carpal tunnel release surgery by Dr. Zwemer

November 2000:  Left carpal tunnel release surgery.  As of that date, Plaintiff was already complaining regularly of low back pain.

July 2001:  First treated for heel spurs.  X-rays showed degenerative disc disease in thoracic spine.

March 2002:  Problems with heels again.

April 2002:  Heels still hurting but trying to walk 3 miles a day.

May 2002:  Plaintiff received injections of Depo-Medrol and Xylocaine in both heels.

July 19, 2002:  Plaintiff slipped in the bathtub and incurred a severe bruise to her right posterior chest, possibly a non-displaced fracture of the sternum.

July 20, 2002:  Plaintiff was involved in a motor vehicle accident, after which she noted severe pain in her left foot.  X-rays did not initially reveal a fracture.

September 2002:  Plaintiff complained of severe, sharp back pain.  She had noted some increase in back pain after the car accident, but it had exacerbated in the previous two weeks, becoming progressively sharper.  The pain was constant, aggravated by activity, radiating into her hips, and interfering with sleep.  Her ankle and chest were still bothersome but beginning to improve.  She was given a Medrol Dosepak and prescriptions for Soma and pain medications.

October 2002:  Plaintiff's back was not significantly improved and she had reinjured her foot/ankle.  Plaintiff also indicated that she had experienced increased numbness in her left hand since the car accident.  X-rays of the ankle revealed a small non-displaced fracture of the cuboid.  An MRI of her back showed degenerative disc disease and mild degenerative spinal stenosis, but otherwise there were no objective findings relating to her back pain.

November 2002:  Plaintiff's foot was doing better, though she was still wearing a brace.  She indicated continuing problems with her back, aggravated by "digging a small drainage ditch." (AR 172.)

December 2002:  Plaintiff continued to complain of back pain.  Activity, including trying to do housecleaning, aggravated the pain in her back, which was otherwise fairly constant.  She was having difficulty sleeping.  The only objective signs were slightly positive standing leg raise on the left and tenderness in left paraspinal muscles.  Dr. Haynes prescribed a TENS unit and anti-inflammatory medications (Bextra), and recommended physical therapy and exercise.

January 2003:  Plaintiff indicated the TENS unit, physical therapy, Bextra and exercises seemed to be helping her back some but not much.  She received injections bilaterally at the sacroiliac joints, which also helped only a little.  Dr. Haynes again noted no objective signs except for diffuse tenderness through the thoracic spine and at the SI joint.  Plaintiff also reported persistent left hand problems since the motor vehicle accident in July.  New tests in late January showed mild carpal tunnel syndrome bilaterally.

February 2003:  Plaintiff fell on icy steps, injured her coccyx.

April 2003:  Plaintiff continued to complain about low back pain.  Coccyx injury was resolving.  She received trigger point injections.

April 2003:  Mary Kay Matthews, L.P.E., performed an independent mental status exam at the Commissioner's request.  Ms. Matthews considered Plaintiff to be a reliable source of information.  She diagnosed social phobia, major depressive disorder (severe without psychotic features) and chronic post-traumatic stress disorder, and assigned a current GAF of 65.  Ms. Matthews also found that Plaintiff was able to handle simple or detailed work-like procedures and instructions; to perform activities within a schedule; to maintain regular attendance, to be punctual; and to sustain an ordinary routine without special

supervision. However, she also found Plaintiff to be limited in the ability to maintain concentration, to work in coordination or proximity to others, to complete normal work day and week without interruptions from psychologically related symptoms and to perform at a consistent pace without an unreasonable number and length of mental rest periods. Plaintiff could make simple work-related decisions, ask simple questions, request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with co-workers without distracting them, maintain socially appropriate behavior, adhere to basic standards of neatness, respond appropriately to changes in the work environment, be aware of an take appropriate precautions regarding work hazards, use public transport, set realistic goals, make plans independently of others. (AR 156–61.)

May 2003: Mental RFC completed by Edward L. Sachs, Ph.D., who found that Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions, to maintain concentration and attention for extended periods, to perform work in coordination or proximity to others without being distracted by them, to complete a normal work-day and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to get along without coworkers or peers without distracting them and to respond appropriately to changes in the work setting. Dr. Sachs found Plaintiff to be only mildly limited in other areas, including the ability to remember, understand and carry out simple work-related instructions, maintain regular attendance and punctuality, maintain a schedule, sustain ordinary routine, make simple work-related decisions, ask simple questions, request assistance, maintain appropriate social behavior, and so forth. He clarified that he believed Plaintiff could perform simple and some detailed tasks over full workweek in coordination with others, interact infrequently or one-to-one with general public, and adapt to gradual or infrequent changes.

August 2003: Dr. Woodlee diagnosed Plaintiff with bronchitis with bronchospasm and gastritis, and noted a history of asthma, sleep disorder, depression, and a recent D&C.

August 14, 2003: D.D.S. consultant, Timothy Fisher, D.O., performed a consultative medical examination. Dr. Fisher noted some minor neurological deficits and found that Plaintiff should be able to do jobs requiring standing and/or walking 6 to 8 hours a day, gripping and manipulating 5 to 15 pounds frequently and 15 to 20 pounds occasionally. He did not state an opinion as to any limitations with respect to sitting.

September 2003: Dr. Haynes noted that Plaintiff had complained of persistent hand pain since the July 2002 motor vehicle accident.

On September 4, 2003, James Millis, M.D. completed an RFC based on his medical records review, in which he opined that Plaintiff could lift 50 lbs occasionally, 25 pounds frequently, stand/walk about 6 hours and sit for about 6 hours in an 8-hour workday. He noted Plaintiff's use of her hands should be limited to "frequently." He relied for his findings primarily on Dr. Fisher's exam but noted that Dr. Fisher had not indicated any specific abnormal neurological findings. Dr. Millis stated that Plaintiff's alleged degree of pain was the sole factor that caused him to limit her RFC to occasionally lifting/carrying 50 pounds and limiting use of hands and stated that "lack of medical imaging studies confirming a severe back impairment causes the claimant's alleged impairments to be less than credible." (AR 223.)

On September 17, 2003, Plaintiff underwent a major surgery that involved the laparascopic removal of her gallbladder as well as a complete hysterectomy, bilateral salpingo-oophorectomy (surgical excision of fallopian tubes and ovaries), and appendectomy.

In October 2003, Plaintiff complained to Dr. Woodlee of overall tiredness, decreased energy, headache, difficulty sleeping, crying, depression, irritability, and aching all over. At that point, Dr. Woodlee performed various tests, including one to detect possible Epstein Barr Virus ("EPV"), which turned out to be positive, among others.

November 2003: Dr. Woodlee diagnosed chronic EPV infection.

December 2003: Plaintiff continued to complain of aching all over and generally feeling bad. Dr. Woodlee noted a history of chronic fatigue secondary to EPV and assessed musculoskeletal pain related to probable fibromyalgia.

January 2004: Plaintiff was sleepwalking, fell and bruised her right knee and injured her left wrist. An MRI showed a bulging disc at C6-7 and mild narrowing at C5-6, but no spinal cord impingement. She received trigger point injections in her back. She underwent surgery on the broken wrist/hand with external fixation. When Dr. Woodlee saw Plaintiff later the same month, he noted her right leg was in a knee immobilizer and left forearm in a splint and sling, and she had a bruise over her right eye.

March 2, 2004: Complaining of neck and low back pain and now problems with her right wrist, for which she also received a splint. Dr. Woodlee continued to assess fibromyalgia and increased Plaintiff's Lortab prescription to 7.5 mg every eight hours as needed. Later in the month, Plaintiff noted pain in her right elbow and was diagnosed with epicondylitis and given a tennis elbow brace.

March 11, 2004: Plaintiff underwent an evaluation by Dr. J. Thomas John, Jr., a chronic pain specialist, who noted that Plaintiff had "typical classical fibromyalgia tender points" and that "most of the control points are negative," allowing him to verify a diagnosis of fibromyalgia. He recommended water therapy and a book about fibromyalgia. (AR 323–24.)

April 2002: X-rays showed post-traumatic arthritis in the left wrist and Dr. Haynes recommended and scheduled a resection of the left distal ulna, which was performed sometime between April 20 and May 10, 2004.

May 2004: Dr. Haynes changed the left wrist splint from a metal one to a light-weight plastic one and instructed her to start working on motion. (AR 286.) Plaintiff complained to Dr. Woodlee of excessive daytime sleepiness; he prescribed Provigil and also noted continued complaints of fibromyalgia pain. Plaintiff's depression was noted to be doing somewhat better with Paxil.

May 12, 2004: Dr. Martin Murphy, from whom Plaintiff received mental health counseling during the spring and summer of 2004, noted serious marital problems as well as serious medical problems and injuries, depression, sleep disorder and anxiety. He assessed a current GAF of 65.

July 2004: Plaintiff reported her wrist pain was "tolerable" and continued to complain of low back pain. Dr. Haynes found some limited range of motion in the lumbar spine, slight straightening of the cervical spine, and some spondylolisthesis at L5-S1 and straightening of cervical spine, but no other objective findings.

August 2004: Plaintiff reported falling in the bathtub, aggravating the pain in her lower back and left wrist. An MRI of her lumbar spine showed anterolisthesis at L5-S1 with bilateral spondylolisthesis pars intra-articularis at L5 (Grade 1). The same month, Dr. Woodlee noted Plaintiff's complaints of chronic aching pain in her knees, ankles, back, hips. Her depression was somewhat better.

September 2004: Dr. Woodlee noted Plaintiff was on Lortab for chronic pain management. He also noted chronic bronchitis on top of Plaintiff's other problems.
October 2004: Plaintiff's wrist was somewhat better. She reported some continuing discomfort but was told by Dr. Haynes she could start leaving off her brace/splint.

November 2004: Wrist pain much better but pain in right elbow exacerbated, which Plaintiff attributed to trying to clean her house. She received injections at her right elbow and at trigger points in her back.

January 2005: Dr. Haynes noted several more falls due to sleepwalking, trouble with left wrist, both knees, cervical spine.

March 2005: Dr. Haynes noted Plaintiff should not look for a job that required repetitive use of left hand or lifting more than about 5 lbs.

July 14, 2005: Dr. Haynes completed a Medical Assessment of Ability to Do Work-Related Activities for Plaintiff in which he opined that Plaintiff was limited to lifting up to 5 pounds occasionally and no weight frequently. He supported this assessment by noting: "Osteoarthritis; degenerative lumbar and cervical disc disease; status post crushed [sic] fracture and surgery of left wrist 2Xs; status post fracture 2Xs of left ankle; status post bi-lateral CTS release; bi-lateral CTS presently; chronic pain syndrome; chronic fatigue; epicondylitis of right elbow, requiring use of a brace; all as evidenced by physical exams, tests, x-rays, surgeries and consultative exams." (AR 325.) He also stated that Plaintiff was limited to walking 2 hours in an 8-hour workday, and up to a half hour without interruption; limited to sitting 5 hours in an 8-hour workday, and up to one hour uninterrupted. He assessed Plaintiff as "rarely" able to perform postural activities including climbing, balancing, crouching, crawling and stooping, and could never kneel. Again, in response to the question of what medical findings supported his assessment, Dr. Haynes noted: "fibromyalgia, severe post traumatic arthritis lt wrist, spondylolisthesis." (AR 326.) Finally, Dr. Haynes then noted that Plaintiff was limited in reaching, handling, feeling, pushing and pulling "due to DDD, severe pain in her back, and residuals from her various fractures and subsequent surgeries. These movements will exacerbate her chronic pain." (AR 327.) He also indicated she should avoid heights, moving machinery, temperature extremes and vibration, as these conditions would "markedly [increase] the pain from her post traumatic arthritis in her Lt wrist," and again cited "carpal tunnel syndrome, fibromyalgia, severe post traumatic arthritis" as the medical conditions that supported his various findings. (AR 327.) Dr. Haynes specifically noted that the degree to which Plaintiff was limited could normally be expected from the type and severity of the diagnoses in this case, that the diagnoses were confirmed by objective findings, and that his opinion was not based primarily on Plaintiff's subjective complaints. (AR 329.)

III.    THE ALJ'S DECISION

After reviewing the evidence in the record the ALJ made the following specific findings:

1.      The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in § 216(i) of the Social Security Act and is insured for benefits through December 31, 2004.

2.      The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.      The claimant's history of depression, social phobia and posttraumatic stress disorder; history of bilateral carpal tunnel release surgery; history of left distal radius

fracture with surgery; history of left ankle fractures (two times); fibromyalgia; lumbar spine degenerative disc disease; chronic Epstein-Barr virus; and right elbow epicondylitis are considered "severe" in combination based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  She has no more than mild restrictions of the activities of daily living or more than moderate limitation of ability to maintain social functioning or to sustain concentration, persistence, or pace. She has experienced no episodes of decompensation, and she functions adequately outside of a highly supportive setting.

5.      The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The claimant has the following residual functional capacity:  perform a reduced range of unskilled light work, with lifting of five to ten pounds; sitting occasionally in an eight-hour workday; and standing or walking up to six hours in an eight-hour workday.  In addition, the claimant can perform simple and some detailed tasks over a full workweek in coordination with others; can interact infrequently or one-to-one with the generally public and meet basic social demands in a work setting; and can adapt to gradual or infrequent changes.

7.      The claimant's past relevant work as brake technician/assembler did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8.      The claimant's medically determinable history of depression, social phobia and posttraumatic stress disorder; history of bilateral carpal tunnel release surgery; history of left distal radius fracture with surgery; history of left ankle fractures (two times); fibromyalgia; lumbar spine degenerative disc disease; chronic Epstein-Barr virus; and right elbow epicondylitis do not prevent the claimant from performing her past relevant work.

9.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(AR 22–23.)

## III.    THE MAGISTRATE'S DECISION AND THE PLAINTIFF'S OBJECTIONS

In her motion for judgment on the administrative record, Plaintiff argued that the ALJ erred in (1) finding that she had the residual functional capacity to perform a reduced range of light work and that she could return to her past work; (2) failing to consider  the combined effect of her numerous complaints, including pain; and (3) rejecting Plaintiff's treating physician's opinion.  (AR 16-1, at 3.)  The Magistrate Judge filed his Report finding that none of Plaintiff's arguments was meritorious and recommending that the Plaintiff's motion be denied and the Commissioner's decision affirmed.  Plaintiff has filed Objections to the Magistrate's Report, in which she objects to the following specific findings by the Magistrate Judge on the grounds that they are not supported by substantial evidence in the record:

1.      The finding that the record fails to establish plaintiff's inability to engage in any substantial gainful activity due to her combination of impairments that have lasted for a continuous period of not less than 12 months.

2.      The finding that Dr. Haynes' notes from mid-2002 through early 2003 do not support the limitations he assessed in 2005.

3.      The finding that Dr. Haynes' assessment is inconsistent with his own treatment records and the prior assessment of Dr. Fisher and that the ALJ was not bound to give controlling weight to the opinion of Dr. Haynes.

4.      The finding that the demands as a brake technician/assembler accommodate [Plaintiff's] assessed residual functional capacity as found by the ALJ. . . .

(Doc. No. 22, at 1–2.)

## IV.     DISCUSSION

Plaintiff's first three arguments are "intertwined" and she discusses them all together in one section of her brief.  The gist of her argument is that the ALJ erred in finding that she was not disabled based on his rejection of Dr. Haynes' assessment and his adoption of Dr. Fisher's assessment instead.  Because the Court finds, as set forth below, that the ALJ erred in failing to accord controlling weight to Dr. Haynes' opinion, which if adopted would direct a conclusion that Plaintiff is disabled from performing any full-time work in the national economy, the Court does not reach Plaintiff's objection that the ALJ erred in finding she could perform her past relevant work as a brake technician/assembler.

### A.      The ALJ Erred in Failing to Accord Controlling Weight to Dr. Haynes' Opinion

In considering Dr. Haynes' opinion, the ALJ noted that Dr. Haynes completed the medical assessment form for Plaintiff in July 2005, approximately six months after the expiration of Plaintiff's insured period,[2] and that ordinarily, "great evidentiary weight can be given to a treating physician['s] opinion only when it is supported by appropriate clinical findings and is not inconsistent with other, substantial evidence of record."  (AR 19 (citing SSR 96-2p).)  The ALJ then stated that the limitations ascribed by Dr. Haynes exceeded and were not supported by his own clinical notes or any other treating source, and he therefore accorded "little weight to Dr. Haynes' opinion."  (AR 19–20.)  He accorded Dr.

_____

[2] The Defendant is simply incorrect in arguing that because Dr. Haynes' assessment was provided in July 2005, it is not relevant to a determination of Plaintiff's disability status prior to December 31, 2004.  The diagnoses and symptoms upon which Dr. Haynes' assessment is based all predate December 31, 2004 by a substantial margin, and there is no evidence that Plaintiff's condition changed substantially between the fall of 2003 and the summer of 2005.

Fisher's opinion, given after of his consultative examination in August 2003, substantial weight instead. (AR 20.)

To be sure, this Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Under this standard, the Court finds that the Commissioner's decision is not supported by substantial evidence in the record.

The first glaring problem with the ALJ's decision is that Dr. Fisher performed his consultative examination and rendered his opinion about Plaintiff's condition just a month before Plaintiff underwent a major surgery that involved removal of her gallbladder, appendix, uterus, fallopian tubes and ovaries, and approximately two months before she was diagnosed with chronic EPV and fibromyalgia, and five months before she fell (again) and seriously broke her wrist and thereafter underwent two separate surgeries to repair it. Thus, while it appears that Dr. Fisher's opinion regarding Plaintiff's condition up through and including the date he examined her is supported by substantial evidence in the record, his opinion is not supported by substantial evidence and cannot be considered remotely relevant to her condition after the September 17, 2003 date of Plaintiff's abdominal surgery.

Second, the ALJ's contention that Dr. Haynes' assessment is not supported by his own treatment notes or clinical findings is simply not supported by the record. Prior to giving his assessment, Dr. Haynes had noted that Plaintiff was limited to lifting five pounds and should not do any frequent lifting with her left hand. Moreover, the clinical bases cited in support of his assessment—"Osteoarthritis; degenerative lumbar and cervical disc disease; status post crushed [sic] fracture and surgery of left wrist

2Xs; status post fracture 2Xs of left ankle; status post bi-lateral CTS release; bi-lateral CTS presently; chronic pain syndrome; chronic fatigue; epicondylitis of right elbow, requiring use of a brace; all as evidenced by physical exams, tests, x-rays, surgeries and consultative exams" (AR 325)—are all clearly documented by the medical record, including objective tests as well as Plaintiff's subjective complaints.

Third, while the Magistrate Judge recommended upholding the ALJ's determination based in part upon the "paucity of medical evidence which addresses the treatment" of Plaintiff's fibromyalgia and chronic fatigue/EBV, there is no indication in the record that effective treatments exist for these conditions other than those Plaintiff was already trying through treatment of the various symptoms related to the conditions, including pain, fatigue, depression and so forth. As other courts have recognized, "[f]ibromyalgia is an 'elusive' and 'mysterious' disease. It has no known cause and no known cure. Its symptoms include severe musculoskeletal pain, stiffness, fatigue, and multiple acute tender spots at various fixed locations on the body." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) (footnotes and citations omitted). Courts have likewise recognized that "[t]here is no laboratory test for the disease's presence or severity. Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions." *Id.* (footnotes and citations omitted). The ALJ in this case, as in other similar cases, erroneously rejected Plaintiff's treating physician's opinion for failing to provide objective clinical, diagnostic and/or laboratory findings and because the opinion was not supported by the totality of the objective medical evidence or other evidence and was inconsistent with that evidence. *See id.* (reaching same finding). Here, although the ALJ referred to Dr. John's positive diagnosis of fibromyalgia based upon "typical classic fibromyalgia tender points," he emphasized the other normal physical and neurological findings, which in fact are typical in fibromyalgia cases. *Id.* The ALJ's rejection of Dr. Haynes' opinion, therefore, is inconsistent with the legal standards applicable for determining the weight to be given to treating physicians' opinions in fibromyalgia cases and lacks the support of substantial evidence. *Id.*

The Regulations require that if a treating physician's opinion on "the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given controlling weight. 20 C.F.R. § 404.1527(d)(2). Here, while the Court agrees with the Magistrate

Judge that Dr. Haynes' notes from mid-2002 through mid-2003 do not necessarily support the limitations assessed in 2005, it is clear that those limitations are supported by his and other practitioners' treatment notes beginning no later than September 17, 2003, when Plaintiff underwent abdominal surgery and shortly thereafter was diagnosed with EPV/chronic fatigue and fibromyalgia/chronic pain syndrome. The DDS did not obtain any consultative examinations or medical records reviews after that date, so Dr. Haynes' opinion as to Plaintiff's condition from September 17, 2003 through December 31, 2004, besides being supported by both the objective and subjective medical evidence, is uncontradicted. The ALJ erred in not giving controlling weight to Dr. Haynes' assessment beginning at least as of September 17, 2003.

      **B.**       **The Effect of Giving Controlling Weight to Dr. Haynes' Opinion**

Sentence four of § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). A court can reverse the Commissioner's decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

As previously indicated, the Court finds that the ALJ erred in failing to assign controlling weight to Dr. Haynes' assessment beginning at least as of September 17, 2003. Adoption of Dr. Haynes' assessment would require a finding that the Plaintiff became disabled from performing any full-time work that exists in the national economy by that date, because Dr. Haynes' found that Plaintiff was not capable of sitting, standing and walking in combination for a total of at least eight hours in a day. Because the ALJ's decision was clearly erroneous; proof of disability is strong, and evidence to support an alternative conclusion is completely lacking, remand for an additional hearing on the issue of disability is not required. The evidence in the record clearly demonstrates that Plaintiff has been disabled at least since

the date of her surgery on September 17, 2003, and she is entitled to disability insurance benefits beginning on that date.

V.      **CONCLUSION**

For the reasons discussed above, the Court finds that Plaintiff's objections are meritorious at least in part and require rejection of the Magistrate Judge's Report and Recommendation.  The Court will therefore set aside the Report & Recommendation, grant the Plaintiff's Motion for Judgment on the Administrative Record, reverse the decision of the Commissioner and award benefits for the period of September 17, 2003 through December 31, 2004.  An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge